CANTONI v. ACHESON, Secretary of State.
No. 28414.

United States District Court
N. D. California, S. D.
Feb. 2, 1950.

Cosgrove, Molinari & Tinney, San Francisco, Cal., for plaintiff.

Frank J. Hennessy, United States Attorney, Edgar R. Bonsall, Assistant United States Attorney, San Francisco, Cal., for defendant.

GOODMAN, District Judge.

This is an action pursuant to 8 U.S.C.A. § 903 [1] for a declaratory judgment declaring plaintiff to be a national of the United States.

Plaintiff was born of Italian parents on September 14, 1916 in California. In 1922 his mother separated from his father taking plaintiff with her to Italy, where plaintiff has ever since continuously resided. He had his schooling in Italy. It is admitted that he knew, from the time he entered school as a young boy, that he had been born in the United States. He served in the Italian army from May 15, 1937 to August 19, 1938. While in the Italian army he took an oath of allegiance to Italy in June of 1937. At that time he was a few months short of his majority. No claim of United States citizenship was made by him at the time he joined the Italian army or at the time he took the oath of allegiance. At no time during his military service did he raise objection thereto on account of his American birth. On March 14, 1944, he applied for and obtained what is known as an Italian card of identity wherein his Italian nationality was noted.

On June 2, 1946, then being almost 30 years of age, and a competent adult, he voted in an Italian election. In February, five months before he voted in the Italian election, he received notice that he had inherited some property in California from an uncle. He testified [2] that in July of 1946, for the first time, because of inquiry by him to the American Consul in Turin, Italy, respecting a passport to come to America, he became aware that his birth in America might entitle him to American citizenship. An American passport, applied for on February 5, 1947, was later, on January 23, 1948, denied him on the ground that he had renounced his citizenship because of voting in the 1946 Italian election. He subsequently obtained permission to come to the United States and in November of 1948 commenced the instant proceeding.

8 U.S.C.A. § 801 provides that a national of the United States loses his nationality by, among other acts,—

1. Taking an oath of allegiance to a foreign state; or

2. Voting in a political election in a foreign state.

Plaintiff contends that at the time he served in the Italian army and took the oath of allegiance to Italy and also at the time he voted in the Italian election, he acted without knowledge that he was entitled to American citizenship. Hence he claims that such acts were not freely or intelligently done. Full and intelligent choice, it is asserted, is essential to effectuate renunciation. [3] Plaintiff now says, not that he was not cognizant at all times of the place of his birth, but that he was not aware of the legal impact of the place of his birth upon his citizenship until the year 1947, when he was almost 31 years of age.

Having heard his testimony and the other evidence, I am not willing to accept this unilateral expression as true. From the time he was a boy starting to school he

---

1. "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States."

2. The plaintiff speaks no English and his testimony was given at the trial with the aid of an Italian interpreter.

3. See Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 1947, 161 F.2d 860; Acheson v. Murakami, 9 Cir., 1949, 176 F.2d 953; Yuichi Inouye v. Clark, D.C.S.D.Cal. 1947, 73 F.Supp. 1000.

knew that he was born in the United States. His day by day activities, as well as his service in the Italian army, his oath of allegiance to Italy, his voting in the Italian election, were performed with continuing awareness of the place of his birth. All of the circumstances pertaining to his life in Italy, plus my appraisal of him as a witness, are convincing that his statement of unawareness of the consequences of his American birth is unacceptable.

But even assuming the verity of his alleged belief locked in the secret chamber of his mind until he was past thirty years of age, it does not constitute evidence legally sufficient to sustain his contention that he did not freely and intelligently perform the acts that, under the law, constitute renunciation of American citizenship.[4]

 It is now settled law in cases arising under 8 U.S.C.A. § 903 that undisclosed intent is not legally relevant in determining the validity of an overt act of renunciation. "There is no suggestion in the statutory language (i. e. 8 U.S.C.A. § 801) that the effect of the specified overt acts, when voluntarily done, is conditioned upon the undisclosed intent of the person doing them." Savorgnan v. U. S., 1950, 70 S.Ct. 292, 296.

 There is no credible evidence in this case that the acts of renunciation were not voluntarily and freely done. There was testimony that plaintiff performed military service because he thought he had to and that he voted because he feared some governmental sanctions would otherwise be imposed. But that does not amount to an involuntary or forced act in the sense that he was compelled to perform such acts in spite of an "intensity of * * * purpose to retain his American nationality." Dos Reis ex rel. Camara v. Nicolls, supra note 3 [161 F.2d 862]. Any claimed reluctance in the performance of these acts was no more than may have conditioned the minds of many other Italians at the time. The facts do not disclose the kind of duress or involuntariness present in Dos Reis ex rel. Camara v. Nicolls, supra, note 3; Schioler

v. U. S., D.C.N.D.Ill.1948, 75 F.Supp. 353, or In re Gogal, D.C.W.D.Pa.1947, 75 F. Supp. 268.

 Plaintiff now wants to reassume American citizenship for the not wholly concealed purpose of expediting his claim to and use of an inheritance of property in America from an American uncle. It is, not amiss here to refer to a characterization in Doreau v. Marshall, 3 Cir. 1948, 170 F.2d 721, 724, that sometimes "crass material considerations suggest that course." There is not the slightest evidentiary basis for assuming that during his mature years, either before or after the acts of renunciation, plaintiff was devoted to or subscribed to the principles of the Constitution of the United States.

American citizenship cannot be put on and taken off like a cloak, willy nilly, to suit economic advantage or disadvantage.

The cause will be dismissed upon findings presented pursuant to the Rules.

---

4. The right of renunciation has always been regarded as a natural and inherent right and as fundamental as any other prerogative of citizenship. See footnote 10, Savorgnan v. U. S., 1950, 70 S.Ct. 292, 295, post.