**YEP WHY SUN v. DULLES, Secretary of State.**

**Civ. A. No. 670.**

United States District Court
N. D. Texas, Wichita Falls Division.
March 28, 1953.

———◆———

John Davenport, Wichita Falls, Tex., for plaintiff.

Frank Potter, U. S. Atty., Charles Lindsey, Asst. U. S. Atty., Fort Worth, Tex., for defendant.

ATWELL, Chief Judge.

This suit is brought under section 903 of the Nationality Act, Title 8 U.S.C.A.

That Section provides for a declaration of United States nationality in the event of denial of rights and privileges as a national. It allows a person, "regardless of whether he is within the United States, or, abroad," to "institute an action against the head of such Department or agency in the District Court of the United States for * * * the district in which such person claims a permanent residence." Such action is "for a judgment declaring him to be a national of the United States * *."

This applicant was born in 1930. His father was an American citizen, who had visited his family village in China where he married the mother of this applicant. About twelve months after such marriage the applicant was born to them. The father returned to the United States after his marriage and forwarded money to the mother and his new son for their support. There appears to be no question as to the facts with reference to the boy's nationality. Prior to his majority, taking advantage of his dual citizenship, he came to the United States.

In Ryckman v. Acheson, D.C., 106 F. Supp. 739, will be found a decision under this particular statute. It relates to a woman who had been a citizen of Canada but moved to the United States with her husband, where her husband died, after which she returned to Canada in order that she might take care of her mother who was seriously ill.

That situation required the plaintiff to be with the mother constantly from April 1945 to the date of the mother's death which occurred some time later. During the times when others could stay with the mother, the plaintiff would return to the United States.

At no time did she understand or intend to waive her citizenship in the United States.

In 1946 her citizenship papers were taken away from her by the American Consul, and in June, 1950 she was formally advised that she had lost her citizenship. This was based upon an United States statute which provided that she had expatriated herself by residing continuously for three years in the territory of a foreign state in which the place of her birth is situated.

The court held that she did not lose her citizenship or nationality in the United States, by administering to her mother.

Also, in D.C., 106 F.Supp. 760, in Gualco v. Acheson, is a similar suit under the same statute by a brother and sister of Italian parentage who were citizens of Italy at the time the brother and sister were born in the United States, and by reason of such birth were United States citizens.

The taking of the children thereafter by their parents to Italy where the parents resumed their native nationality, the children also acquired that nationality but did not lose United States citizenship under the Nationality Act of 1940 by failing to return to the United States by their twenty-third birthday, if such residence abroad beyond that time is involuntary.

See also Nationality Act of 1940, §§ 401 (a), 407, 8 U.S.C.A. §§ 801(a), 807.

■ The child only loses its nationality if it does not return within a reasonable time after he is free to do so in order to preserve his United States citizenship. Supra.

These children applied for United States passport in 1936 but were denied, and in 1939 the male was drafted into the Italian army, and in 1943 was taken prisoner by German forces, after which release he was ill for some time, and applied for passport to the United States on August 27, 1948, which the court held was a reasonable time, and was entitled to a decision declaring the establishment of United States citizenship. Nationality Act 1940, supra.

Furthermore, it will be found that section 903, Title 8 U.S.C.A., provides that "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person * * * may institute an action against the head of such Department * * * in the District Court of the United States * * in which such person claims a permanent residence for a [declaratory judgment]."

■ "The student will also find the following cases helpful: Pandolfo v. Acheson, 2 Cir., 202 F.2d 38; Hong, et al. v. Acheson, D.C., 110 F.Supp. 48; Ly Shew v. Acheson, D.C., 110 F.Supp. 50; Lee Hong v. Acheson, D.C., 110 F.Supp. 60; and Lew Mun Way v. Acheson, D.C., 110 F.Supp. 64." See also Mandoli v. Acheson, on certiorari granted, 343 U.S. 976, 72 S.Ct. 1071, 96 L.Ed. 1368; Martinez v. McGrath, D.C., 108 F.Supp. 155; Nieto v. McGrath, D.C., 108 F.Supp. 150, 151; Yee Gwing Mee v. Acheson, D.C., 108 F.Supp. 502, which is a decision refusing to require the Consul at Hong Kong to issue a certificate. But I do not believe that decision is in point in the present case, because in the case at bar the plaintiff, under the Nationality Act, prays for a declaration of United States nationality, and that Act quoted above allows a person, regardless of whether he is in the United States, or, outside of the United States, to institute an action against the head of such Department or Agency, in the district court of the United States for the district in which such person claims a permanent residence. That is what the plaintiff here has done, and is doing.

Declaration of citizenship must be pronounced for Yep Why Sun.