William P. ROGERS, as Attorney General of the United States of America, Appellant,

v.

Urho Paavo PATOKOSKI, Appellee.

No. 15719.

United States Court of Appeals Ninth Circuit.

Nov. 16, 1959.

C. E. Luckey, U. S. Atty., Victor E. Harr, Asst. U. S. Atty., Portland, Or. Charles Gordon, Regional Counsel, Immigration & Naturalization Service, St. Paul, Minn., for appellant.

Davis, Jensen, Martin & Robertson, William A. Martin, Portland, Or., for appellee.

Before BONE and HAMLEY, Circuit Judges, and BOWEN, District Judge.

BOWEN, District Judge.

This is an appeal by appellant Attorney General of the United States from the judgment of the Trial Court in a declaratory judgment action by appellee under Section 1503(a), Title 8, U.S.C.A.[1] That judgment declared appellee to be a United States national and citizen because he was born in Finland of a father who was at the time of appellee's birth a United States naturalized citizen, although as he admits, appellee had prior to such declaratory judgment served in the Finnish Army[2] and had voted in at least one Finnish political election.

In effect, appellant contends that appellee voluntarily performed such army service and did such voting, and that each of such acts constituted a voluntary abandonment of appellee's United States nationality and citizenship. Appellee contends in effect that when he did such acts, he was not aware of such nationality and citizenship and therefore could not have abandoned and did not abandon such nationality and citizenship voluntarily.

The issue before the Trial Court and this Court was and is whether appellee, when he voted in Finland and when he was serving in the armed forces of Finland[3] where he was born and always lived until his present sojourn in this country, voluntarily abandoned his United States citizenship derived by operation of law from his father's United States naturalized citizenship.

The crucial time as to voluntariness of appellee's alleged abandonment of such American citizenship is as to each instance the time when he rendered such military service and did such voting, rather than some other time before or after such service and voting, although his words or conduct at other times under certain conditions might throw light upon appellee's state of mind when he rendered such service and did such voting.

\* \* \* \* \*

"(b) Taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state; or

"(c) Entering, or serving in, the armed forces of a foreign state \* \* \*; or

\* \* \* \* \*

"(e) Voting in a political election in a foreign state \* \* \*."

1. Section 1503(a), Title 8, U.S.C.A., provides:

"If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department \* \* \* upon the ground that he is not a national of the United States, such person may institute an action \* \* \* against the head of such department \* \* \* for a judgment declaring him to be a national of the United States, \* \* \*."

2. Sec. 401 of the Nationality Act of 1940, 54 Stat. 1168 [now 8 U.S.C.A. § 1481], which applies to this action, in pertinent part provides:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

3. There were in fact three separate periods of appellee's Finnish Army service, but appellant treats only the last one of them as important because that period from June, 1941 to October, 1944 being the last of such three periods was, as admitted by appellant, the only one occurring after Section 401(c) of the Nationality Act of 1940 took effect.

Appellee was about 20 years old when he began as a private, but after a time was promoted to and later finished as a sergeant his first Finnish Army service period. About ten years thereafter, he began as a sergeant but finished as a 2d lieutenant his second period of such service. About a year after such second period, he began as a 2d lieutenant but finished in October, 1944 as a 1st lieutenant his third period of such service.[4] He voted in a Finnish political election about 1946. It was in 1945 when appellee for the first time showed an interest in his coming to the United States when he wrote of that subject to the United States Consul in Helsinki on the opposite end of Finland, hundreds of miles from his Finnish home. He arrived in this country in February, 1947 on a visitor's permit to study construction engineering here, and according to appellee's statement, he was advised in April, 1949 by the United States Immigration and Naturalization Service that he had previously become a citizen of this country, but at that time that Service contended that by reason of his army service and voting in Finland he had lost such citizenship. Thereafter appellee, however, asserted he was still a citizen of this country and was not subject to deportation for overstaying his 1947 visitor's permit, and he so contends now.

Respecting such alleged voluntariness, appellant lays great stress upon the circumstance that appellee admits his father's telling him of his father's being a naturalized United States citizen when his father further asserted his right to return at will to this country, and also upon the circumstance that shortly before her death, appellee's mother showed him his father's United States citizenship papers which appellee brought with him to this country and introduced in evidence before the Trial Court in this case, and also upon the circumstance that when appellee entered this country in 1947, when about 40 years old, to begin his present sojourn, he claimed only Finnish and not American citizenship.

From the foregoing circumstances and others including appellee's army service and voting in Finland, appellant reasons in effect that appellee could not have remained for about 40 years or more of his life wholly unaware of his derivative citizenship, but that appellee, when he served his third period in the Finnish Army after Section 401 of the Nationality Act of 1940, 54 Stat. 1168, took effect and when he voted in Finland, knew of his derivative United States citizenship and intended to and did, at the time of such third period army service and of such voting, voluntarily abandon such citizenship.

The foregoing circumstances so strongly relied upon by appellant to prove appellee's abandonment of his United States citizenship deserve and have received our careful consideration, but, partly because of the language barrier against appellee's easily realizing the expansive significance of his father's status as an American citizen and against easily realizing the meaning of his father's citizenship papers, and after considering all the facts and circumstances of the case, we cannot escape the far greater weight and more convincing power of the appellee's direct and positive testimony before the Trial Court that no one in Finland ever told him he himself was a citizen of this country, and that he never knew that he ever was such citizen until the Immigration and Naturalization Service in April, 1949 advised him in connection with deportation proceedings against him that he had become such citizen through his father's admission to United States citizenship when also that Service contended that appellee had lost such derivative citizenship by his army service and voting in Finland.

As to such direct and positive testimony, we are, as was the experienced and able Trial Judge who had the advantage of observing appellee's demeanor on the witness stand, convinced that ap-

4. Please see footnote 3.

pellee was telling the truth. Appellant does not point to any direct evidence to the contrary nor to any direct evidence of appellee's intention to abandon or of his abandonment of his United States citizenship, and we do not find any such direct evidence in the record. Furthermore, we do not find in the record any fact or circumstance indicating that under Finnish law appellee had any choice whatsoever as to his serving or not serving in the Finnish Army. On the contrary, we do find that the Finnish Constitution provides that

"For the defense of the fatherland and lawful order of society, every man in Finland is responsible for military service,"

which is a constitutional requirement of universal compulsory military service from "every man in Finland", citizens and non-citizens alike, without discretion or volition on their part. So, that constitutional requirement cannot alone furnish fact or circumstance showing or tending to show that appellee voluntarily served in the Finnish Army and thereby in contemplation of law abandoned his American citizenship. That is all the more true because appellee did not take an oath of allegiance to Finland respecting his third period of Finnish Army service.

Accordingly, we agree with the ruling of the Trial Court that

"The plaintiff could not expatriate himself or lose or abandon his United States of America citizenship by taking an oath of allegiance to the Finnish Government or by serving in the Finnish Army or by voting in a Finnish election because he did not know he was a citizen of the United States of America when he did those things, and the plaintiff has not expatriated himself or lost or abandoned his United States of America citizenship by doing those things with such lack of knowledge."

The judgment of the Trial Court declaring and adjudging that appellee is a citizen of the United States is in all respects affirmed.