MATTER OF YANEZ-CARRILLO

In EXCLUSION Proceedings

A-13536165

*Decided by Board August 27, 1963*

The retention provisions of section 301(b), Immigration and Nationality Act, requiring continuous physical presence in the United States for at least 5 years between the ages of 14 and 28, do not operate to deprive an individual of United States citizenship until he has had a reasonable opportunity to come to the United States as a U.S. citizen after learning of such claim to citizenship.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without visa.

The case comes forward pursuant to certification by the special inquiry officer of his decision dated June 10, 1963, finding the applicant to be an alien and excludable as an immigrant not in possession of proper documents.

The facts of the case are not in dispute. The record relates to a native of Mexico, single, who seeks admission into the United States as a United States citizen. He was born in Mexico on June 24, 1935. His father was a native and citizen of Mexico who never resided in the United States, but his mother was born in Ysleta, Texas, and is a citizen of the United States. She resided in the United States for various periods prior to the birth of the applicant. The applicant's parents married in Mexico on October 15, 1932, and he is the legitimate issue of that marriage. The applicant entered the United States for the first time as a citizen on January 7, 1963, in possession of a United States citizen's identity card issued to him at the American Consulate at Juarez, Mexico, on the same date. Previously he had entered and remained in the United States on different occasions as a nonimmigrant agricultural worker from September 1955 to December 1955, September 1956 to December 1956, September 1957 to January 1958, May 1958 to August 1958, September 1959 to December 1959, and September 1960 to September 1961. The last two periods have been corroborated by the Service and there is no reason to doubt

the applicant's testimony as to the dates he came to the United States as a nonimmigrant worker.

The applicant testified that he went to the American Consulate in February 1962 to inquire about an immigrant visa and at that time learned for the first time that he might be a United States citizen through his mother. Prior to that date he had never known he might have a claim to United States citizenship nor had he ever discussed the possibility with a United States Government official. At the end of December 1962, the applicant received a letter from the American Consulate in Juarez, Mexico, which informed him that he could be issued a document as a citizen of the United States and that it would be necessary for him to proceed immediately to the United States to live.

The applicant's claim to United States citizenship rests upon section 1993, Revised Statutes, as amended by the Act of May 24, 1934, through his mother who is a citizen of the United States and who had been present in the United States prior to his birth. Under section 201(g) of the Nationality Act of 1940, the applicant was required to reside in the United States before his sixteenth birthday; but under sections 301(b) and (c) of the Immigration and Nationality Act of 1952, he could regain United States citizenship by coming to the United States prior to his twenty-third birthday and by being continuously physically present in the United States for at least five years, providing that such physical presence followed the attainment of the age of 14 years and preceded the age of 28 years. Section 16 of the Act of September 11, 1957, states that absences from the United States of less than twelve months in the aggregate during the period for which continuous physical presence in the United States is required shall not be considered to break the continuity of such physical presence. The applicant here reached his twenty-third birthday on June 24, 1958, at which time he had been in the United States for four different periods as an agricultural worker. However, there was an absence in excess of twelve months from August 1958 until September 1959 which broke the continuity of his residence and the time prior thereto could not be computed for the purposes of complying with the physical presence requirement of section 301(b) of the Act.

The Department of State in a memorandum (Ex. 6) expresses the opinion that the evidence of record establishes that the applicant was never aware of his possible claim to United States citizenship through his mother prior to January 16, 1962, on which date his mother applied for a United States citizen's identification card at the Consulate. On the basis of the Attorney General's opinion of May 24, 1962 (*Matter of C—S—*, Int. Dec. No. 1281), it was concluded that the applicant had applied at the Consulate for a determination of his United

367

States citizenship within a reasonable period after learning of his possible claim to such citizenship; and that under the circumstances he might properly be issued limited documentation valid for a period to enable him to proceed forthwith to the United States to begin compliance with the retention provisions of section 301(b) of the Immigration and Nationality Act.

*Matter of C—S—*, Int. Dec. No. 1218, involved a native-born Cuban, born May 31, 1933, who acquired United States citizenship through his father under revised section 1993. The applicant did not know of his citizenship until many years later in 1959 and voted in a Cuban political election on November 3, 1958, while unaware of his United States citizenship. The Board of Immigration Appeals relied on the case of *Rogers* v. *Patokoski*, 271 F. 2d 858 (9th Cir. 1959), which held, on closely similar facts, that voluntary acts abroad of voting and serving in the armed forces of a foreign country did not result in expatriation where the individual was unaware of his United States citizenship.[1] The Attorney General compared the decisions in *Perri* v. *Dulles*, 206 F. 2d 886 (3rd Cir. 1953), and *Petition of Acchione*, 231 F. 2d 845 (3rd Cir. 1954), which held that the two-year period established by section 401(a) of the Nationality Act of 1940, during which a dual national must return to the United States or forfeit his American citizenship, did not run until he became aware of his United States citizenship. The court in *Perri* v. *Dulles*, *supra*, held that for constitutional reasons the two-year period of limitations must also be regarded as not beginning to run until the plaintiff learned that he had a claim to American citizenship; for to provide that a citizen "shall be forever estopped" from claiming citizenship by his failure to return to the United States at a time when he was fully unaware of his citizenship would certainly be to deprive him of it arbitrarily and without his knowledge, much less his concurrence. The Attorney General stated that the presumption in section 349(b) is addressed only to the question of whether the asserted act of expatriation was committed voluntarily or under duress, and that it had no application to a case such as the present in which the acts were performed voluntarily but without the knowledge of the individual's United States citizenship. The Attorney General cited the Supreme Court holding that where a deprivation of the person's right of citizenship is involved, the facts and the law should be construed as far as reasonably possible in the favor of the citizen (*Nishikawa* v. *Dulles*, 356 U.S. 129 (1958)). He refused to attribute to Congress an intention that United States citizenship of an individual should be forfeited by reason of actions taken at a time when he was unaware of his citizenship.

---

[1] *Matter of C—A—*, Int. Dec. No. 1175 (1961).

It is believed that the language of the Attorney General in *Matter of C—S—*, Int. Dec. No. 1218, is broad enough to include the present case of the applicant. Section 301(b) of the Immigration and Nationality Act is not a provision relating to expatriation but it does involve a forfeiture of a claim to United States citizenship upon failure to meet the prescribed conditions. In this respect it is similar to the provisions of section 401(a) of the Nationality Act of 1940 that a dual national return to the United States within the two-year statutory period or suffer the loss of citizenship, which has been construed not to run until the individual became aware of his claim to United States citizenship.[2] The Attorney General has endorsed the holding in those cases and it appears to be but a logical extension to hold that the forfeiture provisions of section 301(b) of the Immigration and Nationality Act requiring continuous physical presence in the United States between the ages of 14 and 28, do not operate to deprive an individual of United States citizenship until he has had a reasonable opportunity to come to the United States as a United States citizen after learning of such claim to citizenship. Under the circumstances of this case, which clearly show that the applicant did not become aware of his possible claim to United States citizenship until February 1962 when he was so informed by officials at the American Consulate, was documented as a citizen by December 1962 and then proceeded immediately to the United States, it is concluded that citizenship has not terminated under section 301(b). The decision of the special inquiry officer will be reversed.

**ORDER:** It is ordered that the decision of the special inquiry officer dated June 10, 1963, be reversed and that the applicant be admitted as a United States citizen.

---

[2] *Perri v. Dulles,* 206 F. 2d 586, 591 (3d Cir. 1953) ; *Petition of Acchione,* 213 F. 2d 845 (3d Cir. 1954).