## MATTER OF RAMOS

## In Deportation Proceedings

## A-20303516

*Decided by Board June 2, 1976*

Where the record indicated that respondent was aware that he possessed United States citizenship and had failed to come to the United States for a continuous period of at least two years between the ages of 14 years and 28 years as required by section 301(b) of the Immigration and Nationality Act, respondent lost his United States citizenship notwithstanding his claimed ignorance of the retention requirement of the statute.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251 (a)(2)]—Entered without inspection

ON BEHALF OF RESPONDENT:
Donald L. Ungar, Esquire
Phelan, Simmons & Ungar
517 Washington Street
San Francisco, California 94111

ON BEHALF OF SERVICE:
Brian H. Simpson
Trial Attorney

In a decision dated October 14, 1975, the immigration judge found the respondent deportable, but granted him the privilege of voluntary departure. The respondent has appealed from that decision, contending that he is a citizen of the United States and not subject to deportation. The appeal will be dismissed.

Counsel has conceded that the respondent is deportable under section 241(a)(2) of the Immigration and Nationality Act, if he is an alien. Consequently, the only issues on appeal involve the respondent's claim to United States citizenship.

The respondent was born in August of 1939 in Mexico. His father was a citizen of Mexico, but his mother was a citizen of the United States. She had been born in Kansas in 1919, but had been taken to Mexico at the age of two or three and had resided there until 1957 or 1958. The parties agree that the respondent was a citizen at birth by virtue of section 1993 of the Revised Statutes, as amended by the Act of May 24, 1934 (48 Stat. 797), which provided:

Sec. 1993. Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of

671

the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States and resides therein for at least five years continously immediately previous to his eighteenth birthday, and unless, within six months after the child's twenty-first birthday, he or she shall take an oath of allegiance to the United States of America as prescribed by the Immigration and Naturalization Service.

It is this provision which governs the respondent's acquisition of United States citizenship. However, after the respondent's birth, Congress enacted several significant changes relating both to the acquisition and retention of citizenship by persons born abroad. It is only the changes to the retention requirements which concern us here.

On the facts of this case, section 301(b) of the Immigration and Nationality Act is the provision governing the retention requirements applicable to the respondent. See generally sections 201(g) and (h), Nationality Act of 1940 (Act of October 14, 1940, 54 Stat. 1137); sections 301(a)(7), 301(b) and 301(c), Immigration and Nationality Act. Section 301(b) presently provides:

(b) Any person who is a national and citizen of the United States under paragraph (7) of subsection (a) shall lose his nationality and citizenship unless—(1) he shall come to the United States and be continously physically present therein for a period of not less than two years between the ages of fourteen years and twenty-eight years; or (2) the alien parent is naturalized while the child is under the age of eighteen years and the child begins to reside permanently in the United States while under the age of eighteen years. In the administration of this subsection absences from the United States of less than sixty days in the aggregate during the period for which continuous physical presence in the United States is required shall not break the continuity of such physical presence.

The respondent first entered the United States in January of 1973, at the age of 33. At the hearing, counsel for the respondent conceded that his client had failed to comply with the residency requirement, necessary for the retention of his United States citizenship, contained in section 301(b). A prima facie case of alienage was therefore established.

The respondent, bearing the burden of going forward with the evidence, then advanced two theories under which he claimed not to have lost his United States citizenship. He contended (1) that he was ignorant of the retention requirement and consequently that it should not apply to him, and (2) that the government should be estopped from applying the retention requirement to him because in 1957 his mother had been advised by a United States consular official about the respondent's citizenship, but had not been advised about the retention requirement.

The immigration judge found that the respondent was not in fact ignorant of the residency requirement necessary for retention of United

672

States citizenship. The immigration judge therefore did not directly address the legal contentions raised by counsel for the respondent. On appeal, counsel has specifically declined to pursue his estoppel theory, and the only contentions which we must address involve the respondent's claimed ignorance of the retention requirements.

The immigration judge found that the respondent had failed to come forward with any believable evidence that he was unaware of the retention requirements of section 301(b). The record indicates that any information which the respondent may have had about those requirements would have come from his mother and his older brother after their visit in 1957 to a United States consular official.

In 1973, the respondent's mother and older brother testified in the deportation case relating to another brother of the respondent. Their testimony, which was also taken before the immigration judge who handled the respondent's case, was to the effect that the consular official had never informed them of the requirements for retention of United States citizenship. That testimony was introduced as an exhibit at the respondent's hearing. The immigration judge found the testimony of the mother and older brother to be confusing and not worthy of belief. The immigration judge also found that the respondent was not a credible witness.

On appeal, counsel stresses that the important question concerns the knowledge of the respondent, not the knowledge of his relatives. Counsel argues that the limited contact which the respondent had with his relatives after their 1957 visit to the consular official, as well as the general lack of education of all of the respondent's family, strongly suggest that the respondent did not know of the retention requirements, even if his mother and brother had been so informed.

We, however, agree with the immigration judge that the respondent has not shown that he was in fact ignorant of the retention requirements relating to his United States citizenship. The respondent's older brother did write to the rest of the family concerning the visit with the consular official, and the respondent's mother did visit with her family in Mexico after 1957. The record establishes that the respondent's family in general was quite interested in the status of particular family members with respect to the United States. We find it difficult at accept the possibility that every detail of the 1957 consular visit was not reported to the rest of the family, including the respondent. In addition, we cannot infer a lack of knowledge from the respondent's failure to enter the United States at an earlier date, because the respondent's family was admittedly too poor to finance the journey from their village in Mexico to the United States.

We recognize that the testimony of the respondent and the other members of his family is consistent on the issue of whether or not they

received information on the retention requirements. The immigration judge, however, found the witnesses to be incredible, and his finding is entitled to considerable weight. *Matter of Teng*, 15 I. & N. Dec. 516 (BIA 1975); *Matter of S—*, 8 I. & N. Dec. 574, 576 (BIA 1960); *Matter of T—*, 7 I. & N. Dec. 417 (BIA 1957).

We have found that the respondent has failed to carry his burden of going forward with the evidence to show that he was ignorant of the retention requirement associated with his United States citizenship. Moreover, we have concluded that the respondent would have lost his United States citizenship by virtue of his failure to comply with those retention requirements, even if he was unaware of them.

Counsel argues that the respondent's alleged ignorance of the *retention requirement* is significant, because of the case law holding that a person who is unaware that he possesses United States *citizenship* cannot lose it by performing an otherwise expatriating act. See *Rogers v. Patokoski*, 271 F.2d 858 (C.A. 9, 1959); *Matter of C—S—*, 9 I. & N. Dec. 670 (A.G. 1962); *Matter of C—A—*, 9 I. & N. Dec. 482 (BIA 1961). The respondent, however, was not unaware that he possessed United States *citizenship*. The record shows that the respondent at least suspected that he had United States citizenship since the age of ten, and that he clearly knew of his status after his relatives visited the consular official in 1957. The cases relied on by counsel therefore are not in point, and we need not now consider the questiom that would be presented if the respondent had at all relevant times been ignorant of his claim to United States citizenship. Cf. *Petition of Acchione*, 213 F.2d 845 (C.A. 3, 1954).

Counsel recognizes that the Supreme Court upheld the constitutionality of section 301(b) in *Rogers v. Bellei*, 401 U.S. 815 (1971). Counsel, however, attempts to distinguish *Bellei* on the ground that the individual involved in that case was clearly aware of both his citizenship *and* the retention requirements. Counsel evidently contends that ignorance of the retention requirements alone is significant because of the Supreme Court's decision in *Schneider v. Rusk*, 377 U.S. 163 (1964).

In *Schneider v. Rusk*, supra, the Court declared unconstitutional the expatriation of naturalized citizens merely for residing for several years in a foreign country. The Court indicated that foreign residency was not inconsistent with undiluted allegiance to the United States, and that the distinction created by Congress between native-born and naturalized citizens violated the equal protection guarantee contained in the Fifth Amendment's due process clause.

Counsel for the respondent and the Service's trial attorney each stress different aspects of the Court's decision in *Schneider*, attempting either to analogize it to, or to distinguish it from, the case at hand. We, however, have our doubts concerning the precedential value to be

assigned *Schneider* in view of the Supreme Court's subsequent decision in *Afroyim* v. *Rusk,* 387 U.S. 253 (1967). Furthermore, we have concluded that *Rogers* v. *Bellei,* supra, is controlling for our purposes, even if *Schneider* retains some present-day relevancy.

The retention requirement of section 301(b) was upheld in the face of a constitutional challenge in *Bellei.* The statutory framework governing the respondent's citizenship makes no mention of an exception from the residency requirement for an individual ignorant of that requirement. Counsel is, in essence, attacking the constitutionality of the retention requirement as applied to an individual who knows of his claim to citizenship, but who does not know of the retention requirement. We know of no court case dealing with this very issue, and we do not entertain constitutional challenges to the statutes we administer. *Matter of L—,* 4 I. & N. Dec. 556 (BIA 1951). We hold that the respondent lost his statutorily based United States citizenship when he failed to comply with the terms of the statute. He is an alien, and subject to deportation on the charge contained in the order to show cause.

ORDER: The appeal is dismissed.

*Further order:* Pursuant to the immigration judge's order, the respondent is permitted to depart from the United States voluntarily within 31 days from the date of this order or any extension beyond that time as may be granted by the district director; and in the event to failure so to depart, the respondent shall be deported as provided in the immigration judge's order.