## DI GIROLAMO v. ACHESON.
### Civ. 4163–49.

United States District Court
District of Columbia.
Dec. 7, 1951.

Abraham Kaufman, New York City, Pearson and Ball, Washington, D. C., for plaintiff.

Harold Bacon, Asst. U. S. Atty., Washington, D. C., for defendant.

YOUNGDAHL, District Judge.

Plaintiff, Mario Arnaldo Di Girolamo, seeks a judgment of this court declaring him to be a National of the United States.[1]

He was born in Italy on February 20, 1913. He asserts that at his birth his father was a naturalized citizen of the United States, and by virtue thereof plaintiff became a United States citizen.

The government disputes the claim that plaintiff's father was a naturalized United States citizen, and further asserts that even if plaintiff did become a citizen of the United States, he expatriated himself.

Plaintiff denies that he ever intended to relinquish his citizenship in the United States and contends that the facts do not justify a finding of expatriation.

1. The first issue whether plaintiff's father was a naturalized United States citizen turns on a question of identity of parties. It is plaintiff's position that his father was naturalized on November 2, 1904, in Marshall County, Illinois, under the name of Giovantino Di Giolamo. Defendant concedes that one Giovantino Di Giolamo was naturalized at that time and place, but claims that the person named in that proceeding is not plaintiff's father. The government concedes that the misspelling of Di Giolamo in the naturalization papers is an obvious error as the signature of the person naturalized is clearly Girolamo. The given name of plaintiff's father is Sabatino, whereas it appears as Giovantino in the naturalization proceedings. This discrepancy is not explained in the record, and does present some confusion. Yet it seems fairly clear to the court from the facts established by the evidence that the Giovantino Giolamo mentioned in the naturalization proceedings was plaintiff's father. The American Consul at Rome in a letter to plaintiff's attorney dated March 29, 1949 conceded this to be a fact.[2]

2. Having concluded therefore, that plaintiff became a United States citizen because of the naturalization of his father, the next question is whether plaintiff lost

---

1. The procedure adopted here is authorized under Nationality Act of 1940, § 503, 8 U.S.C.A. § 903.

2. The following is a paragraph from the letter of the American Consul at Rome: "The archives of this office show that Sabatino Di Girolamo was born at Castelvecchio Calvisio, Italy on October 14, 1871 and died in the United States on December 15, 1918; that he emigrated to the United States in or about 1899, residing principally at Toluca, Illinois; that he was naturalized before the County Court of Marshall County, Illinois on November 2, 1904, under the name of Giovantino *Di Giolamo*, certificate number unknown."

382

his citizenship by expatriation. The government supports its claim of expatriation by asserting that plaintiff took an oath of allegiance to the King of Italy when entering the Italian Army as a minor, and that plaintiff confirmed that oath by subsequent service in the Italian Army after reaching his majority. Further the government claims that plaintiff's subsequent failure to take proper steps to protect his United States citizenship resulted in his expatriation.

■■ Defendant frankly acknowledges it to be well settled law that a minor does not expatriate himself by taking an oath of allegiance to a foreign government.[3] But the government argues that plaintiff confirmed this oath by subsequent military service after attaining his majority. When plaintiff took the oath of allegiance as a member of the Italian Army, he had dual nationality. There seems to be no statutory provision requiring an election in any form on the part of a person who has dual nationality.[4] However, there is a line of cases holding that an American National who commits certain acts during minority, which are otherwise expatriating, may confirm those acts after reaching majority.[5] But the facts in these cases are clearly distinguishable from those in the case at bar. No doubt, a minor may by clear and unequivocable acts, after reaching his majority, indicate a desire to confirm certain acts committed during his minority and which would be expatriating except for his minority. The instant case does not present such a situation. There cannot be expatriation because of the confirmation of such acts unless the intention is clear to relinquish the citizenship in the United States.[6] Each case therefore must be judged by its own facts and circumstances in order to determine whether there was a voluntary relinquishment of one's citizenship.

■ The government contends that after plaintiff reached his majority, his service in the Black Shirts (Fascist Militia), and his subsequent service on several occasions in the Italian Army without taking proper steps to protest and to protect his United States citizenship indicated an intention to relinquish it. Although there is some evidence which tends to give weight to the government's argument, considering the record as a whole, the court does not feel that the evidence justifies a finding of expatriation. Plaintiff's service in the Black Shirts cannot be considered expatriating. Prior to the Nationality Act of 1940 neither entering or serving in a foreign army was expatriating. It was not until the enactment of the Nationality Act of 1940 that service in a foreign army became expatriating.[7] Further the record indicated that the Fascist Militia was not a part of the Italian Army. Nor is the court convinced that plaintiff indicated an intention to relinquish his United States citizenship by failing to take proper steps to protect it. He testified that he first learned of his status as an American citizen in 1938 from two residents of Castel Vecchio, Italy where both plaintiff and his father were born. Shortly thereafter, on July 28, 1939, and before plaintiff's first service as a reservist in the Italian Army, he made application for a United States passport at the American Consul office in Italy, but his application was denied on the ground that he had expatriated himself. Plaintiff cannot be considered to have intended to relinquish his United States citizenship by his subsequent service as a reservist in the Italian Army after he had been told by the Consul that he had lost his citizenship.

After a careful consideration of this record the court has reached the conclusion that plaintiff is entitled to judgment of this

3. United States ex rel. Baglivo v. Day, D.C., 28 F.2d 44. Tomasicchio v. Acheson, D.C., 98 F.Supp. 166, 174.

4. Tomasicchio v. Acheson, supra.

5. Cantoni v. Acheson, D.C., 88 F.Supp. 576. Boissonas v. Acheson, D.C., 101

F.Supp. 138. Ex parte Gilroy, D.C., 257 F. 110.

6. Tomasicchio v. Acheson, supra.

7. Nationality Act 1940, § 401, 8 U.S.C.A. § 801.

court declaring him to be a United States National.

Findings of fact, conclusions of law may be drawn by counsel consistent herewith.