**PERRI v. DULLES.**

No. 10906.

United States Court of Appeals
Third Circuit.

Argued April 7, 1953.

Decided July 24, 1953.

Paige & Paige and Samuel Paige, New York City (Peter P. Artaserse, Jersey City, N. J., on the brief), for appellant.

Edward V. Ryan, Asst. U. S. Atty., Jersey City, N. J. (Grover C. Richman, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH and Mc-LAUGHLIN, Circuit Judges.

MARIS, Circuit Judge.

Nicola Perri appeals from the judgment of the District Court for the District of New Jersey entered against him upon his complaint filed under Section 503 of the Nationality Act of 1940 seeking a judgment declaring him to be a citizen of the United States. The district court found that the plaintiff, a citizen of the United States, had voluntarily expatriated himself and for that reason was not entitled to the judgment he sought. 105 F.Supp. 434.

The plaintiff's father, an Italian citizen by birth, immigrated to the United States and was naturalized in Chicago on January 24, 1906. His residence in the United States, interrupted by a number of visits to Italy, continued until 1926 when he returned to Italy and resided there until his death in 1941. His son, the plaintiff, was born in Italy on November 24, 1913 and was reared there. He nonetheless became a citizen of the United States at birth under Section 1993, Revised Statutes, 8 U.S.C.A. § 713, since his father was a naturalized citizen. The plaintiff's first entry into the United States was after the commencement of this suit in 1950 when he was admitted under a certificate of identity in order to prosecute the present litigation.

Under Article 9 of the Italian Nationality Law of June 13, 1912 [1] the plain-

---

[1] "Article 1. One is a citizen by birth:
   "(1) When his or her father is a citizen.

   *   *   *   *   *   *

   "Article 8. One loses citizenship:

   "(1) When he of his own will acquires a foreign citizenship and establishes or has established his residence abroad.

   *   *   *   *   *   *

   "Article 9. He who has lost his citi-

tiff's father, who had lost his Italian citizenship upon being naturalized in the United States, reacquired it in 1928 after two years residence in Italy. As a result the plaintiff also became a citizen of Italy under Article 12 of the same law, since he was then a minor child of his father, 15 years of age, residing in Italy. He did not thereby lose his American citizenship, however, but from that time on became a citizen of both nations.[2]

In September 1933 when he was 19 years old the plaintiff was conscripted into the Italian army and was assigned to an indefinite inactive status. In May 1934, when he was 20 years old he took an oath of allegiance to the King of Italy. He served actively in the Italian army from April 9, 1934 to August 28, 1934, from May 15, 1935 to July 1, 1936, from August 30, 1939 to March 31, 1940, and finally from May 30, 1940 to July 28, 1944. The plaintiff voted in the Italian municipal and national elections in 1946.

The plaintiff testified that his father had informed him that he had rights as an American citizen and that he was known in his community as an American citizen when he first entered the Italian army. This was contradicted by certain written statements which the plaintiff had previously made in Italy, however, and the district court did not credit this testimony. In any event in May, 1947 the plaintiff visited the American Consulate in Naples and learned

that he might have a claim to American citizenship. He testified that he was told at the Consulate on this visit "that I had a right to go back to America as an American citizen." Frequently thereafter he wrote to the Consulate on the subject. On January 4, 1949, he filed with the Consulate his application for registration as a citizen of the United States. His application for such documentation having been, denied he brought the present suit to establish his citizenship status.

The defendant contends that the plaintiff expatriated himself by taking the oath of allegiance to the King of Italy in 1934, by serving in the armed forces of Italy, by voting in the Italian elections in 1946 and by failing to return or attempting to return to the United States and take up permanent residence here within the time prescribed by the Nationality Act of 1940.[3] These grounds we will examine in turn.

Section 2 of the Expatriation Act of 1907 provided "That any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state."[4] It appears that the plaintiff took such an oath in 1934. But he was then a minor. It has long been settled both by administrative practice and judicial decision and the defendant concedes that a citizen by birth who has not yet attained his majority cannot expatriate himself by taking an oath of allegiance to a foreign state.[5] Expatria-

zenship in pursuance of Articles 7 and 8, may reacquire it:

   *    *    *    *    *    *

"(3) After two years of residence in the kingdom, if the loss of citizenship had been due to the acquisition of foreign citizenship.

   *    *    *    *    *    *

"Article 12. Minor non-emancipated children of those who acquire or reacquire citizenship, become citizens, except in cases when, residing abroad, they retain the foreign citizenship, in conformity with the law of the state to which they belong. The child of a foreigner by birth, however, having become a citizen, may, within one year from the date when he becomes of age, or obtains the emancipation, declare his choice of the citizenship of his origin.

"Minor non-emancipated children of

those who lose citizenship, become foreigners if they possess their residence in common with the parent who has *patria potestas*, or legal guardianship of them, and acquire the citizenship of the foreign country. * * *" Nationality Laws, Flournoy and Hudson, 1929, pp. 361–380.

2. Such dual citizenship is recognized by our law. Perkins v. Elg, 1939, 307 U.S. 325, 329, 59 S.Ct. 884, 83 L.Ed. 1320; Kawakita v. United States, 1952, 343 U.S. 717, 723, 72 S.Ct. 950, 96 L.Ed. 1249.

3. 54 Stat. 1137, 8 U.S.C.A. § 501 et seq.

4. Act of March 2, 1907, 34 Stat. 1228.

5. United States ex rel. Baglivo v. Day, D.C. N.Y.1928, 28 F.2d 44; Tomasicchio v. Acheson, D.C.D.C.1951, 98 F.Supp. 166, 174; Di Girolamo v. Acheson, D.C.D.C. 1951, 101 F.Supp. 380, 382.

tion must be by voluntary act[6] and the act of a minor is not regarded as voluntary in this sense. The defendant contends, however, that the continuance of the plaintiff in the Italian army after his twenty-first birthday was a continuation of his oath-taking which did effect his expatriation. We do not think that mere continuance in service as a conscript in the Italian army may be held to have that effect.[7] And even if it were so held it could hardly be regarded as a voluntary act, as Attorney General McGrath cogently stated in an opinion which the Supreme Court has recently quoted with approval.[8] The taking of the oath of allegiance accordingly did not expatriate the plaintiff.

The Expatriation Act of 1907 did not make mere service in the armed forces of a foreign state, whether voluntary or involuntary, an act of expatriation. Section 401(c) of the Nationality Act of 1940 for the first time sought to make such service an expatriating act by providing that a national of the United States shall lose his nationality by "Entering, or serving in, the armed forces of a foreign state unless expressly authorized by the laws of the United States, if he has or acquires the nationality of such foreign state". This language is to be qualified, however, by the settled doctrine to which we have referred that expatriation can be the consequence only of voluntary action. Since the plaintiff's entry into the Italian army took place long before January 13, 1941, the effective date of the Nationality Act of 1940, that Act cannot apply to his entry into or service in the armed forces of Italy prior to that date. We, therefore, need not consider the plaintiff's contention that the district court erred in finding that his original entry into the Italian forces was voluntary.

On January 13, 1941, however, the plaintiff, who then had Italian citizenship, was serving actively in the Italian armed forces. The real question at this point, therefore, is whether the plaintiff's military service from and after January 13, 1941 was voluntary in the sense that he could have secured release from it under the laws of Italy but did not do so. Otherwise it was necessarily involuntary, however it may have originated. The plaintiff proved that he was drafted into the Italian army at the age of 19 years and that all his subsequent service was under this original draft. We think that this was sufficient to establish prima facie that his service on and after January 13, 1941 was involuntary. This would, of course, be subject to rebuttal by evidence that on or after that date Italian law or military practice would have permitted the plaintiff to secure release, on the ground of his United States citizenship or otherwise. On remand the defendant will have an opportunity to present such evidence. On the present record, however, we cannot hold that expatriation by continued voluntary military service after January 13, 1941 has been established.

Little need be said with respect to the plaintiff's act in voting in the Italian elections in 1946. If voluntary, these were expatriating acts under Section 401(e) of the Nationality Act of 1940 which makes "Voting in a political election in a foreign state" such an act. The plaintiff asserts that his voting was under duress. The district court found to the contrary. Whether or not this finding was erroneous, however, it is unnecessary to decide. For Congress provided by the Act of August 16, 1951, as amended, that any person who has lost citizenship solely by voting in a political election held in Italy between January 1, 1946 and April 18, 1948 may be naturalized merely by taking the oath of allegiance and a non-communist oath before a naturalization court or foreign service officer at any

---

6. Savorgnan v. United Staes, 1950, 338 U. S. 491, 70 S.Ct. 292, 94 L.Ed. 287; Dos Reis v. Nicolls, 1 Cir., 1947, 161 F.2d 860; Doreau v. Marshall, 3 Cir., 1948, 170 F. 2d 721.

7. Di Girolamo v. Acheson, D.C.D.C. 1951, 101 F.Supp. 380, 382.

8. "The choice of taking the oath or violating the law was for a soldier in the army of Fascist Italy no choice at all." Mandoli v. Acheson. 1952, 344 U.S. 133, 135, 73 S.Ct. 135, 136.

time prior to August 17, 1953.[9] If such oaths are taken by the plaintiff and it turns out upon the final determination of this case on remand that his voting was his only expatriating act he will be assured of his citizenship as Congress intended. And if it ultimately develops that he has expatriated himself by acts other than that of voting his act of voting will be merely cumulative and therefore immaterial. The right to take these oaths expires under the statute, however, on August 16, 1953. If they are not taken on or before that day the plaintiff's rights under the statute will be wholly gone. The district court will accordingly permit the plaintiff forthwith to take the oaths, their effect as to the restoration of the plaintiff's citizenship to await the court's final determination as to whether he committed other expatriating acts.

■ This brings us to the final ground of expatriation relied on by the defendant. Section 401(a) of the Nationality Act of 1940 provides:

"§ 401. A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person: *Provided, however,* That nationality shall not be lost as the result of the naturalization of a parent unless and until the child shall have attained the age of twenty-three years without acquiring permanent residence in the United States: *Provided further,* That a person who has acquired foreign nationality through the naturalization of his parent or parents, and who at the same time is a citizen of the United States, shall, if abroad and he has not heretofore expatriated himself as an American citizen by his own voluntary act, be permitted within two years from the effective date of his Act to return to the United States and take up permanent residence therein, and it shall be thereafter deemed that he has elected to be an American citizen. Failure on the part of such person to so return and take up permanent residence in the United States during such period shall be deemed to be a determination on the part of such person to discontinue his status as an American citizen, and such person shall be forever estopped by such failure from thereafter claiming such American citizenship; * * *."

While the first part of Section 401(a) is clearly prospective in its effect the second proviso applies to American citizens, such as the plaintiff, who prior to its passage had acquired foreign citizenship through the naturalization of their parents during their minority. This proviso of Section 401(a) permitted such persons to return and take up residence as citizens in the United States within two years after January 13, 1941, the effective date of the Act, and provides that upon their failure to do so they shall be conclusively deemed to have given up their American citizenship. The defendant points to the fact that the plaintiff did not comply with the requirements of this proviso and urges that he has thereby expatriated himself.

The proviso in question is in terms applicable to the plaintiff. For under the Italian Nationality Law the plaintiff's father was naturalized in Italy in 1928 by reason of his two years residence there and under the same law the plaintiff, as his minor child residing in Italy, thereby acquired Italian citizenship while remaining at the same time an American citizen. But we do not agree that the plaintiff's failure to return to the United States during the period of two years ending January 13, 1943 necessarily forfeited his American citizenship. During a major part of that period a state of war existed between the United States and Italy, diplomatic intercourse between them had ceased and ordinary travel between the two countries was impossible. If the two years limitation

9. Act of August 16, 1951, c. 321, 65 Stat. 191, as amended by section 402(j) of the Immigration and Nationality Act, 66 Stat. 278, 8 U.S.C.A. § 1435 note.

of the statute were to be construed literally as applicable in this situation it would raise the serious question as to whether Congress may constitutionally decree the involuntary expatriation of an American citizen. For it has been held that the power of naturalization vested in Congress by the Constitution is a power to confer citizenship not a power to take it away [10] and that a change of citizenship cannot be arbitrarily imposed by Congress without the concurrence of the citizen.[11] In order to avoid such questions and to carry out the Congressional intent the statute must be given a reasonable construction.[12] We think, therefore, that the two years limitation must be regarded as having been tolled by the existence of the state of war between the United States and Italy and as not commencing to run again until, through the resumption of diplomatic relations and normal means of travel, it became once more possible for the plaintiff in Italy to secure permission to come to the United States and transportation to accomplish the journey. Moreover for the constitutional reasons already referred to we conclude that the two years period of limitation must also be regarded as not beginning to run until the plaintiff learned that he had a claim to American citizenship. For to provide that a citizen "shall be forever estopped" from claiming citizenship by his failure to return to the United States at a time when he was wholly unaware of his citizenship would certainly be to deprive him of it arbitrarily and without his knowledge, much less his concurrence.

Finally, we think that the statutory time limitation applies to the application by the plaintiff for permission to come to the United States to live and not to the time of his actual arrival here. For if he made application within the two years period, as tolled, the fact that his application was denied or that action upon it was delayed by government officers certainly should not deprive him of his citizenship. It is sufficient, we think if he did what he reasonably could do, within the time prescribed, to gain the necessary permission to come here and that he persisted in these efforts and did not abandon them.

The district court did not address itself to these questions since it took the view in accord with the dictum in Perkins v. Elg, 1939, 307 U.S. 325, 329, 59 S.Ct. 884, 83 L.Ed. 1320, that the plaintiff had previously expatriated himself, by failing to elect to retain his American citizenship and to return to the United States after attaining his majority in 1934. After the order of the district court in the present case was entered, the Supreme Court in Mandoli v. Acheson, 1952, 344 U.S. 133, 73 S.Ct. 135, overruled this dictum and held that no such duty to return existed prior to the Nationality Act of 1940. The defendant accordingly now concedes error as to this portion of the district court's decision and we agree that it cannot stand. It, therefore, now becomes necessary to consider in greater detail the plaintiff's conduct after January 13, 1941.

Although the district court did not make clear findings on the subject it appears that the plaintiff visited the American Consulate in Naples in May 1947 and at that time was first informed of his possible rights as an American citizen.[13] He testified that he kept writing to the Consulate every few months thereafter and there was evidence that a vice consul informed him by letter dated September 17, 1947 that many were ahead of him and that he would have to wait a long time for his turn. It further appears that he made a formal application to the Consulate on January 4, 1949 for registration as a citizen which was subsequently denied and that he finally reached

---

10. United States v. Wong Kim Ark, 1898, 169 U.S. 649, 703, 18 S.Ct. 456, 42 L. Ed. 890.

11. Mackenzie v. Hare, 1915, 239 U.S. 299, 311, 36 S.Ct. 106, 60 L.Ed. 297; Dos Reis v. Nicolls, 1 Cir., 1947, 161 F.2d 860, 862–863.

12. Attorney General of United States v. Ricketts, 9 Cir., 1947, 165 F.2d 193, 195;

Repetto v. Acheson, D.C.N.D.Cal.1950, 94 F.Supp. 623, 625; Gualco v. Acheson, D.C.N.D.Cal.1952, 106 F.Supp. 760, 767.

13. The district court appears not to have credited the plaintiff's testimony, contradicted by earlier written statements, that he had learned from his father of his American citizenship.

the United States on a certificate of identity issued to enable him to prosecute this case. We cannot determine whether these activities amounted to a substantial compliance with the statute, however, since we are without findings as to the time during which the existence of hostilities, the absence of diplomatic relations and the lack of means of travel tolled the two years limitation of the statute. Nor are there the necessary findings with respect to the time of the plaintiff's first knowledge of his possible American citizenship and of the time when and manner in which his applications for permission to come to this country were presented and prosecuted. The case must therefore be remanded for a further hearing and findings on these matters as well as on those referred to earlier in this opinion.

The order of the district court will be vacated and the cause will be remanded for further proceedings not inconsistent with this opinion.