MATTER OF AMICO

In SECTION 341 Proceedings

A-11577150

*Decided by District Director*
*Approved by Assistant Commissioner September 3, 1963*

(1) Where an oath of allegiance is taken during minority, nationality loss under section 2, Act of March 2, 1907, occurs as of the date after attaining majority and prior to January 13, 1941, of the performance of an act confirmatory of the oath of allegiance taken during minority, unless precluded by the proviso to section 2 relating to expatriation during World War I.

(2) Alleged mandatory service from April 2, 1939, to June 19, 1939, in the Italian army by a dual national after attaining majority was involuntary and cannot be regarded as confirmatory of an oath of allegiance taken during monority in the absence of evidence to establish that such service was voluntarily performed and in view of the well-known ruthlessness of the Fascist regime which, even as early as 1935, would hardly have tolerated resistence to its draft laws by an admitted national of Italy.

The above-named has applied for a certificate of citizenship, claiming to have acquired citizenship at birth in Italy on September 7, 1939, to a citizen father and an alien mother.

The pertinent statute in effect when the applicant was born was section 1993, R.S., as amended by the Act of May 24, 1934, providing that:

Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States and resides therein for at least five years continuously immediately previous to his eighteenth birthday, * * *.

The latter part of this section concerning retention of citizenship was changed by the provisions of section 201(g) of the Nationality Act of 1940 (54 Stat. 1138-39), effective 1/13/41, and these in turn

were affected by section 301 (b) and (c) of the Immigration and Nationality Act, effective December 24, 1952 (8 U.S.C. 1401), quoted below:

> Any person who is a national and citizen of the United States at birth under paragraph (7) of subsection (a), shall lose his nationality and citizenship unless he shall come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United States for at least five years: *Provided*, That such physical presence follows the attainment of the age of fourteen years and precedes the age of twenty-eight years.
>
> Subsection (b) shall apply to a person born abroad subsequent to May 24, 1934: *Provided*, however, That nothing contained in this subsection shall be construed to alter or affect the citizenship of any person born abroad subsequent to May 24, 1934, who, prior to the effective date of this Act, has taken up a residence in the United States before attaining the age of sixteen years, and thereafter, whether before or after the effective date of this Act, complies or shall comply with the residence requirements for retention of citizenship specified in subsection (g) and (h) of section 201 of the Nationality Act of 1940, as amended.

The record discloses that the applicant entered the United States on January 18, 1959, when 19 years of age. No issue with regard to applicant's retention of United States citizenship arises out of the fact that he was over 16 years of age when he came to the United States, the taking up of physical presence in this country prior to 23 years of age still being timely for such purposes under section 301(b).

The applicant's father was born on January 28, 1918, in Trenton, New Jersey, of Italian parents. He resided in the United States until 1920, when his father took him to Italy. In 1953, he emigrated to Canada, and on May 27, 1958, he was admitted to the United States as an alien, in possession of an immigrant visa. On November 8, 1937, when only 19 years of age, he voluntarily enlisted in the Italian army for a period of two years, and took an oath of allegiance in connection with such military service. This volunteer status in the Italian army was terminated on October 10, 1938. He was recalled to military service on April 2, 1939, and discharged on June 19, 1939, "for end of enlistment." He was again recalled to active duty in the Italian army on June 21, 1941, and was discharged on November 28, 1944. He voted in Italy in political elections in 1946, 1947, and 19948.

The question presented is whether the applicant's father was a citizen of the United States at the time of the applicant's birth.

The father was a dual national at birth, having acquired United States citizenship by virtue of the XIVth Amendment to the Constitution, and Italian citizenship under the Italian Nationality Law of 1912, which recognizes the principle of jus sanguinis. The expatriation statute in effect at the time of the applicant's birth was section 2 of the Act of March 2, 1907, providing in pertinent part:

356

That any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state. * * * And provided also that no American citizen shall be allowed to expatriate himself when this country is at war.

As pointed out above, the applicant's father took such an oath of allegiance in connection with his entry into the Italian armed forces when he was 19 years of age. It has long been settled by both administrative practice and judicial decision that a citizen by birth, who has not yet attained his majority, cannot expatriate himself under the Act of March 2, 1907, by taking an oath of allegiance to a foreign state (*Perri* v. *Dulles*, 206 F. 2d 586; *U.S. ex rel Baglivo* v. *Day*, 28 F. 2d 44; *Augello* v. *Dulles*, 220 F. 2d 344). However, a minor may by clear and unequivocal acts after reaching his majority indicate a desire to confirm an oath of allegiance taken during his minority and thereby complete his loss of nationality under that Act (*DiGirolamo* v. *Acheson*, 101 F. Supp. 380; *Matter of L—*, 2 I. & N. Dec. 789; *Matter of W—*, 4 I. & N. Dec. 22).

In analogous situations, the Service has followed the "relation back" theory in fixing the date upon which nationality was lost. Thus, it had been held that an act manifesting acceptance of a foreign nationality previously involuntarily acquired related back to the date of acquisition of foreign nationality, thereby resulting in loss of nationality as of the earlier date (*Matter of V—*, 3 I. & N. Dec. 671). Similarly, where persons who had acquired both United States and foreign nationalities during minority elected the foreign nationality, the act of election related back to the attainment of majority (*Matter of G—*, 1 I. & N. Dec. 329). In *Matter of S—*, 8 I. & N. Dec. 604, where an oath of allegiance, not expatriating because taken during a period when the United States was at war, was subsequently confirmed, nationality was determined to have been lost as of July 2, 1921, the date of termination of the war period.

This "relation-back" principle has recently been reconsidered. In a case involving acceptance of a foreign nationality previously acquired by operation of law (*Matter of DiP—*, Int. Dec. No. 1215), the Board of Immigration Appeals ruled that the retroactive feature should be modified, stating as follows:

There is, therefore, no longer any justification for indulging in the fiction that the act showing acceptance of Italian nationality invariably also shows a voluntary acceptance of Italian nationality as of the first possible moment such acceptance could be made. In the interval within which it was possible to make the choice of becoming an Italian national and the actual making of the choice, the individual may have been indifferent, undecided, or even hostile to the acceptance of Italian nationality.

In *Matter of Picone*, Int. Dec. No. 1259, also involving acceptance of a foreign nationality previously acquired, the Attorney General

held that the Board of Immigration Appeals had correctly ruled that expatriation should no longer be held to relate back, but should date from the act of acceptance.

Although these two cases involve acceptance of a foreign nationality involuntarily acquired by operation of law, their rationale should be equally applicable to the instant case. "The significance of the act of acceptance does not lie primarily in its value as proof of previous intent, for such value is often doubtful, but rather in its value as a manifestation of present intent." (*Matter of Picone, supra*). Further, acceptance of a foreign nationality previously acquired, election of nationality by minors possessing dual nationality, and confirmation of an oath of allegiance taken during war time, were all regarded in the same posture in applying the "relation back" theory. It would be anomalous to hold that this doctrine should be abandoned only with respect to foreign nationalities involuntarily acquired, and the rule with regard to oaths of allegiance taken during disability remain unchanged. It must, therefore, be concluded that under section 2 of the Act of March 2, 1907, nationality is lost as of the date after majority upon which an act confirmatory of the underage oath of allegiance is performed, unless that effect is inhibited by the proviso to section 2 relating to expatriation during World War I.

Next we must determine what constitutes a confirmatory act in such instances. Such an act has been characterized as one which indicates a continued allegiance to the foreign state (*Matter of L—, supra*). Clearly, subsequent military service performed after attaining majority is of such a nature, particularly since the recognition of the duty of military service to the country of origin is inconsistent with the duty of an American citizen to this country (See *U.S. ex rel De Cicco v. Longo*, 46 F. Supp. 170). Voting is also regarded as a confirmatory act of an underage oath of allegiance (*Matter of L—*, 2 I. & N. Dec. 789).

Prior to the applicant's birth, the father served a second period of military service from April 2, 1939, to June 19, 1939, after he had attained majority. He has testified that this service was mandatory and was regarded as a continuation of his original two-year enlistment. Did he thereby effectively confirm the oath of allegiance in conformity with the foregoing?

It must be remembered that *no* conduct results in expatriation unless the conduct is engaged in voluntary (*Nishikawa v. Dulles*, 356 U.S. 129). There must be consideration of the circumstances attending the service in the foreign army and the reasonable inferences to be drawn therefrom (*Acheson v. Maenza*, 202 F. 2d 453, citing *Okimura v. Acheson*, 342 U.S. 99 and *Murata v. Acheson*, 342 U.S. 900). Factual doubts are resolved in favor of citizenship (*Alata v. Dulles*,

221 F. 2d 52, and cases cited). Considering the father's testimony in connection with the well known ruthlessness of the Fascist regime, which even as early as 1935, would hardly have tolerated resistance to its draft laws by an admitted national of Italy (See *Acheson* v. *Maenza, supra*) and the absence of any testimony to establish that such period of service was voluntarily performed, it must be concluded that it was involuntary and cannot be regarded as confirmatory of the oath of allegiance taken during minority.

The father's third period of military service from June 21, 1941, to November 8, 1944, and his voting in Italian elections in 1946, 1947, and 1948 are worthy of note. Since these occurred subsequent to the applicant's birth, they cannot have any impact upon his status. They are mentioned for the sole purpose of illustrating an additional development of the expatriation laws. Although a questionable claim of duress has been advanced as to the voting, it may be assumed, arguendo, that such actions were voluntary and, as stated above, would generally be regarded as confirmatory acts of an oath of allegiance taken during minority.

On January 13, 1941, the Nationality Act of 1940 (54 Stat. 1137) became effective. In addition to repealing section 2 of the Act of March 2, 1907, this statute set forth prospective grounds of expatriation. It provided further that loss of nationality shall result *solely* from the performance of the acts or fulfillment of the conditions specified in the Act. Examination of such acts and conditions discloses no provision with respect to confirmation of an oath of allegiance taken while a minor. Moreover, inasmuch as section 2 of the Act of 1907 was repealed prospectively by the Nationality Act of 1940, the Attorney General has ruled that the 1907 Act affected only cases involving acts that occurred during the period between 1907 to 1941 (*Matter of Picone, supra*). It follows that where an oath of allegiance is taken during minority, nationality can be lost under the 1907 Act only if a confirmatory act is performed after majority and prior to January 13, 1941. The third period of the father's military service and his voting, all having occurred subsequent to January 12, 1941, cannot therefore be considered in this aspect.

In light of all of the foregoing, it is found that the applicant's father was not expatriated prior to the applicant's birth and was a citizen of the United States when the applicant was born.

**ORDER:** It is ordered that the application for a certificate of citizenship be and the same is hereby granted.