**Robert RUCKER, Appellant,**

**v.**

**William B. SAXBE, Attorney General of the United States, et al.**

**No. 76–1509.**

United States Court of Appeals,
Third Circuit.

Argued Jan. 3, 1977.
Decided March 17, 1977.

Michael Krinsky, Rabinowitz, Boudin & Standard, New York City, Ira Gollobin, New York City, for appellant.

Jonathan L. Goldstein, U. S. Atty., George E. Mittelholzer, Asst. U. S. Attorney, Newark, N. J., for appellees.

Before VAN DUSEN and ADAMS, Circuit Judges, and WEINER, District Judge.*

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a district court judgment entered in favor of the Government in a September 1973 action for declaration of citizenship brought pursuant to 8 U.S.C. § 1503. Plaintiff Rucker contests both the applicability and constitutionality of the provisions related to retention of citizenship (8 U.S.C. § 1401(b)) by persons born outside of the limits and jurisdiction of the United States to a parent citizen and a parent alien. Plaintiff urges that: the retention requirements should not apply, ab-

sent specific knowledge of them; such application would violate due process; and, in any event, the defendants are estopped from applying them to him for failure to inform his father, Max Rucker, of changes in the statute and for failure to inform plaintiff of the statute's existence. On the facts of this case, we hold that there is no constitutional infirmity to application of those requirements to plaintiff.

### I.

Robert Rucker was born in Argentina on August 30, 1939. His mother was a citizen of Argentina; his father, Max Rucker, was a United States citizen by birth.

At the time of his birth, the plaintiff acquired United States citizenship under R.S. § 1993, as amended in 1934, 48 Stat. 797, formerly 8 U.S.C. § 6, which provided that one born abroad of a parent who was a United States citizen and a parent who was an alien was a United States citizen at birth and would retain citizenship if (1) he resided in the United States for five years immediately prior to his 18th birthday, and (2) he took an oath of allegiance within six months after attaining age 21. We quote the statute in the margin.[1]

---

* Honorable Charles R. Weiner, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. "Sec. 1993. Any child hereafter born out of the limits and jurisdiction of the United States, whose father or mother or both at the time of the birth of such child is a citizen of the United States, is declared to be a citizen of the United States; but the rights of citizenship shall not descend to any such child unless the citizen father or citizen mother, as the case may be, has resided in the United States previous to the birth of such child. In cases where one of the parents is an alien, the right of citizenship shall not descend unless the child comes to the United States and resides therein for at least five years continuously immediately previous to his eighteenth birthday, and unless, within six months after the child's twenty-first birthday, he or she shall take an oath of allegiance to the United States of America as prescribed by the [Immigration and Naturalization Service]."
Section 1993 was carried forward in slightly modified form by amendments in 1940, the Nationality Act of 1940, 54 Stat. 1137, 1139, 8 U.S.C. § 601; in 1952, the Immigration and

Nationality Act, 66 Stat. 163, 8 U.S.C. § 601; and in 1972, 86 Stat. 1289, P.L. 92–584, 8 U.S.C. § 1401.
Section 301 of the Immigration and Nationality Act of June 27, 1952 (8 U.S.C. § 1401), which was applicable from petitioner's 13th birthday until after he became 28, provides:
"(a) The following shall be nationals and citizens of the United States at birth:
"(1) a person born in the United States, and subject to the jurisdiction thereof;

. . . . .

"(7) a person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who prior to the birth of such person, was physically present in the United States or its outlying possessions for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years: *Provided* . . . .
"(b) Any person who is a national and citizen of the United States at birth under paragraph (7) of subsection (a), shall lose his nationality and citizenship unless he shall

On January 17, 1941, Max Rucker registered the date and place of plaintiff's birth with the United States Embassy in Buenos Aires, which issued a Report of Birth. That document indicates that on or about January 12, 1941, Max Rucker became aware of the above residency requirements established by R.S. § 1993, as amended, which was quoted on the back of the Report of Birth. As is apparent, and as the parties stipulated, at all times material to this law suit, Max Rucker was aware of the existence of residency requirements, and aware of their applicability to his son, plaintiff Robert Rucker. Max Rucker registered himself and his son as citizens of the United States with the United States Embassy in 1941, 1943, 1946, 1955 and 1957. The 1955 registration form (Report of Birth, Child Born Abroad of American Parent or Parents), used to report the birth of Max Rucker's daughter Alice to the United States Embassy in Buenos Aires, was sent to Max Rucker on April 26, 1955, by mail. It contained notice of the 1952 amendments to the Immigration and Nationality Act, providing that divestiture of citizenship would occur if the individual whose birth was reported failed to "come to the United States and remain physically present therein for 5 years between the ages of 14 and 28."[2] In January 1962, Max Rucker registered himself alone. Robert Rucker was married in Argentina in May 1962 at the age of 22.

After applying for and obtaining a United States passport, Max Rucker left Argentina for the United States in 1964. His son remained there until 1968, when he came to the United States on a tourist visa issued in Lima, Peru, where he had been involved in a business venture. Plaintiff never made any inquiries to the United States Embassy in Buenos Aires, Argentina, the United States State Department or any other agency of the United States Government concerning his rights to United States citizenship.

In May 1969, plaintiff applied for Certificate of Citizenship with the Immigration and Naturalization Service, which was denied in May 1973, after an evidentiary hearing, on the ground that he had not complied with the retention requirements of 8 U.S.C. § 1401(b), or any of its predecessor statutes. In June 1973, the Assistant Commissioner for Naturalization affirmed the District Director's decision to deny plaintiff's application for a certificate of citizenship.

Plaintiff sought a declaratory judgment that he was a citizen from the district court, which found in favor of the Government. This appeal followed.

## II.

In upholding the decision of the Immigration and Naturalization Service, the district court made specific findings. The judge was satisfied that Robert Rucker "was subjectively unaware of the [retention] requirement until after arriving here" and talking with his father, and that until that

---

come to the United States prior to attaining the age of twenty-three years and shall immediately following any such coming be continuously physically present in the United State[s] for at least five years; *Provided,* That such physical presence follows the attainment of the age of fourteen years and precedes the age of twenty-eight years.

"(c) Subsection (b) shall apply to a person born abroad subsequent to May 24, 1934. . . . "

As noted below, Max Rucker received notice of the above 1952 Amendment to the residence requirement (8 U.S.C. § 1401) when he registered the May 29, 1942, birth of his daughter (petitioner's sister) with the consul at Buenos Aires in 1955.

**2.** See Item 17 of Answers to Requests for Admissions, Document No. 21 in Civil No. 1288–73, D. N.J., filed February 27, 1975, which is the response to plaintiff's Request for Production of Documents, filed February 7, 1974, as Document No. 6 in Civil No.1288–73, *supra.* The form was received by Max Rucker and executed in the presence of witnesses at Monte Carlo, Misiones, Argentina, on May 3, 1955. Its receipt by the United States Consul at Buenos Aires is evidenced by such Consul's signature on May 13, 1955, affirming, *inter alia,* that:

"This report has been executed in triplicate, copy issued to parents, copy transmitted to Department of State, Washington, and copy placed under File No. 131 in the archives of this office."

This form also reported the birth of Robert Rucker as August 30, 1939, for the fourth time. See above this page.

time "Rucker merely assumed he was a citizen and merely needed to come here to apply." The court noted that, judging from the Record of Birth filed with the Embassy in Argentina, Max Rucker was aware of the retention requirements from at least the time that the plaintiff was 1½ years old, and accepted the testimony that Max Rucker, when asked why he had not told his son of the retention requirements earlier, replied that there were no funds for travel to the United States before Robert's 18th birthday, that his mother had been sick, that the intention had been to take the whole family, and that when things did not work out it was already too late to comply with those provisions, and there was no purpose to saying anything. Also, the district court found that:

". . . at no point along the line, particularly on the trip up via Peru, when he [Robert Rucker] was full grown, did he undertake any rational inquiry. He may have lacked specific knowledge but the behavior indicates that he was at least aware that there might be problems, and he felt it was more prudent not to ask lest it prevent him from entering the U. S. altogether."

The record shows that appellant lived in Argentina until he was 29 years old, is a citizen of Argentina, where he managed land, and has a wife, children, family business, and social contacts.[3]

### III.

As to his first contention, plaintiff asserts that *Rogers v. Bellei*, 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971), is distinguishable because Bellei admitted awareness of the retention provision and consciously disregarded its requirements. At oral argument, plaintiff's counsel urged that lack of specific knowledge of the provision should prevent its application no matter at what age a person who acquired citizenship at birth might apply for declaration of this

right. The crux of plaintiff's argument in this regard appears to be the notion that Congress, in enacting the original retention provision and its successors, was primarily concerned with the entanglements which might result from having citizens with dual nationality and dual allegiance. Rucker contends that since he has never acted in a manner inconsistent with allegiance to the United States, the policy underlying the state has not been thwarted, and the fact that he failed to meet the terms of the retention provision should be ignored.

■ Concededly, as plaintiff points out, "[l]iving abroad . . . is no badge of lack of allegiance . . . [and] may indeed be compelled by family, business, or other legitimate reasons." *Schneider v. Rusk*, 377 U.S. 163, 169, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). But just as we recognize the consistency of extended periods of residence outside of the United States with continued loyalty and continued citizenship, the legitimacy of congressional regulation of the terms under which citizenship is offered in this context must also be respected.

### IV.

The Supreme Court has held that the problems attendant upon dual nationality are an appropriate concern for Congress (*Savorgnan v. United States*, 338 U.S. 491, 500, 70 S.Ct. 292, 94 L.Ed. 287 (1950); *Rogers v. Bellei*, 401 U.S. at 831, 91 S.Ct. 1060); that Congress has the power to withhold citizenship entirely from individuals born abroad of one alien parent and one citizen parent (*Rogers v. Bellei*, 401 U.S. at 831, 91 S.Ct. 1060); and that Congress may impose conditions precedent and subsequent to the award of citizenship based upon statute, rather than upon the Fourteenth Amendment (*Rogers v. Bellei* at 834–35, 91 S.Ct. 1060). The Supreme Court specifically stated in *Bellei*[4] that statutory citizenship is

---

3. N.T. 31–32, 42–47, 62.

4. Bellei, like Robert Rucker, was born in 1939, so that the following language of the court in that case is particularly pertinent here:

". . . the plaintiff . . . would not be entitled to full citizenship because, although his mother met the condition for her residence in the United States, the plaintiff never did

not an absolute, and that to hold otherwise would be to:

fulfill the residential condition imposed for him by any of the statutes.

"3. This is so even though the liberalizing 1940 and 1952 statutes, enacted after the plaintiff's birth, were applicable by their terms to one born abroad subsequent to May 24, 1934, the date of the 1934 Act, and were available to the plaintiff. See nn. 5 and 1, *supra*.

"Thus, in summary, it may be said fairly that, for the most part, each successive statute, as applied to a foreign-born child of one United States citizen parent, moved in a direction of leniency for the child. For plaintiff Bellei the statute changed from complete disqualification to citizenship upon a condition subsequent, with that condition being expanded and made less onerous, and, after his birth, with the succeeding liberalizing provisions made applicable to him in replacement of the stricter statute in effect when he was born. The plaintiff nevertheless failed to satisfy any form of the condition.

V

.　　.　　.　　.　　.

"The central fact, in our weighing of the plaintiff's claim to continuing and therefore current United States citizenship, is that he was born abroad. He was not born in the United States. He was not naturalized in the United States. And he has not been subject to the jurisdiction of the United States. All this being so, it seems indisputable that the first sentence of the Fourteenth Amendment has no application to plaintiff Bellei. He simply is not a Fourteenth-Amendment-first-sentence citizen. His posture contrasts with that of Mr. Afroyim, who was naturalized in the United States, and with that of Mrs. Schneider, whose citizenship was derivative by her presence here and by her mother's naturalization here.

"The plaintiff's claim thus must center in the statutory power of Congress and in the appropriate exercise of that power within the restrictions of any pertinent constitutional provisions other than the Fourteenth Amendment's first sentence.

"The reach of congressional power in this area is readily apparent:

"1. . . .

". . . the place of birth governs citizenship status except as modified by statute.

"2. . . . Art. I, § 8, cl. 4, vested Congress with the power to 'establish a uniform Rule of Naturalization.' . . .

"3. . . .

"Mr. Justice Gray has observed that the first sentence of the Fourteenth Amendment was 'declaratory of existing rights, and affirmative of existing law,' so far as the qualifications of being born in the United States, being natu-

". . . convert what is congressional generosity into something unanticipated

ralized in the United States, and being subject to its jurisdiction are concerned. *United States v. Wong Kim Ark*, 169 U.S. [649], at 688 [18 S.Ct. 456, 42 L.Ed. 890]. Then follows a most significant sentence:

'But it [the first sentence of the Fourteenth Amendment] has not touched the acquisition of citizenship by being born abroad of American parents; and has left that subject to be regulated, as it had always been, by Congress, in the exercise of the power conferred by the Constitution to establish a uniform rule of naturalization.'

"Thus, at long last, there emerged an express *constitutional* definition of citizenship. But it was one restricted to the combination of three factors, each and all significant: birth in the United States, naturalization in the United States, and subjection to the jurisdiction of the United States. The definition obviously did not apply to any acquisition of citizenship by being born abroad of an American parent. That type, and any other not covered by the Fourteenth Amendment, was necessarily left to proper congressional action.

"4. The Court has recognized the existence of this power. It has observed, 'No alien has the slightest right to naturalization unless all statutory requirements are complied with . . . .' *United States v. Ginsberg*, 243 U.S. 472, 475 [37 S.Ct. 422, 425, 61 L.Ed. 853] (1917). See *United States v. Ness*, 245 U.S. 319 [38 S.Ct. 118, 62 L.Ed. 321] (1917); *Maney v. United States*, 278 U.S. 17 [49 S.Ct. 15, 73 L.Ed. 156] (1928). And the Court has specifically recognized the power of Congress not to grant a United States citizen the right to transmit citizenship by descent. . . .

"Further, it is conceded here both that Congress may withhold citizenship from persons like plaintiff Bellei and may prescribe a period of residence in the United States as a condition *precedent* without constitutional question.

"Thus we have the presence of Congressional power in this area, its exercise, and the Court's specific recognition of that power and of its having been properly withheld or properly used in particular situations.

VI

"This takes us, then, to the issue of the constitutionality of the exercise of that congressional power when it is used to impose the condition subsequent that confronted plaintiff Bellei. We conclude that its imposition is not unreasonable, arbitrary, or unlawful, and that it withstands the present constitutional challenge."

401 U.S. at 826–31, 91 S.Ct. at 1067–68 (footnotes omitted).

and obviously undesired by the Congress. Our National Legislature indulged the foreign-born child with presumptive citizenship, subject to subsequent satisfaction of a reasonable residence requirement, rather than to deny him citizenship outright, as concededly it had the power to do, and relegate the child, if he desired American citizenship, to the more arduous requirements of the usual naturalization process. The plaintiff here would force the Congress to choose between unconditional conferment of United States citizenship at birth and deferment of citizenship until a condition precedent is fulfilled. We are not convinced that the Constitution requires so rigid a choice. If it does, the congressional response seems obvious." (at 835, 91 S.Ct. at 1071)

The plaintiff does not urge that residence, as a condition subsequent to descent of citizenship, offends the Constitution. Nor does it appear that plaintiff urges that the requirement that residence be completed before a certain age offends the Constitution. Rather, he asserts that as to himself the application of the latter requirement is unfair due to his lack of specific knowledge of the retention provision and its requirements. While we recognize that it is conceivable for unfairness to arise from the application of the retention provision, we are not convinced that plaintiff Rucker's situation presents the excuse or hardship which might justify an abrogation of the congressional prerogative in setting administratively manageable standards and rational nexus requirements upon the extension of citizenship to children born abroad to alien and citizen parents.

Plaintiff Rucker protests that he knew not of this statute—largely because his father kept this information from him—and that he assumed himself to be a citizen of the United States. We again refer to the district court finding that ". . . at no point along the line . . . when he [plaintiff] was full grown, did he undertake any rational inquiry" into his status, even though, as that court noted, his "behavior indicates that he was at least aware that

there might be problems" regarding his United States citizenship, "and he felt it more prudent not to ask lest it prevent him from entering the U.S. altogether" (63a).

We note in this regard that the record indicates that plaintiff Rucker was, and is, a man of some independence and ability. After plaintiff's father departed from Argentina for the United States, Robert Rucker remained there for several years, charged with the maintenance and protection of family properties. Such responsibility is not generally entrusted to anyone incapable of attending to his own legal interests, and it further appears on the record that at the time plaintiff obtained a tourist visa for entry into the United States he was in Peru on business. The conduct of business of any sort, and particularly business with international relationships, suggests the capacity and inclination to investigate and comply with the laws of nations. Lastly, on this point, we observe that the statute did not by its terms or application demand action by a minor or incompetent. Rather, the required acts need only have occurred well after plaintiff's majority, whether that age be measured by the current voting age for federal elections (18), the traditional age of majority (21), or the age at which the plaintiff married (22).

On these facts, we find the apparent absence of specific knowledge of the retention provisions no bar to their application.

## V.

The Third Circuit cases concerning inapplicability of restrictive time provisions in an action by a potential citizen, indicating that they could not be applied where the individual was unaware of a possible claim to citizenship, are distinguishable. In *Perri v. Dulles*, 206 F.2d 586 (3 Cir. 1953), the plaintiff was "wholly unaware" of his claim to citizenship (at 591). *Perri* involved rather extraordinary circumstances and the question of whether the plaintiff had voluntarily expatriated himself by voting in a foreign election and serving in a foreign army. In *Petition of Acchione*, 213 F.2d 845 (3d Cir. 1954), the court found that the

petitioner "had no knowledge of her father's prior United States citizenship or of possibility on her part of a right to American citizenship" (at 845). In both cases this court found that claims of citizenship were timely pursued once the claimants became aware of the rights involved. There is no doubt, in this case, that plaintiff was aware at all times of his claim to American citizenship.

### VI.

After careful consideration of plaintiff's other contentions—that application of the retention requirements to him, absent knowledge of their existence, violates due process, and that defendants are estopped from applying the retention requirements to plaintiff by reason of their failure to inform his father directly of the 1952 amendment to the statute and by reason of their failure to inform plaintiff of their existence—, we find them to be without merit.

As to the first, we note that plaintiff is not stateless. He has lived practically all his life in Argentina and first visited this country in 1968 at the age of 29. He asserts no claim of hardship and, presumably, is eligible to apply for naturalization.

As to the second contention noted above, we find no basis for the inference that there existed or exists an affirmative duty on the part of the Government to inform United States citizens resident abroad of changes in the nationality laws on a continuing basis, nor, in this case, is there indication of affirmative misconduct on the part of consular officials which, in an extreme situation, might warrant a finding of estoppel.

The change in plaintiff's position due to his alleged lack of knowledge of the law resulted not from any affirmative action of the Government, but from the failure of his father to notify him of the necessity of his returning to the United States for five years between ages 14 and 28, even after receiving notice of the 1952 requirement in 8 U.S.C. § 1401 in 1955. See last paragraph of note 1.[5]

### VII.

On the facts of this case, the application of the retention provision has not been shown to be in violation of the Constitution, and the judgment of the district court will be affirmed.

ADAMS, Circuit Judge, concurring:

While I concur in the affirmance of the judgment of the district court, I believe that it is appropriate to register the following comments.

In my view, the present appeal would appear to be controlled by *Rogers v. Bellei.*[1] That case concerned a challenge to the constitutionality of 8 U.S.C. § 1401 and of its application to an individual born abroad to parents, one of whom was an American citizen. The petitioner in *Rogers* had neglected to satisfy the requirements relating to the retention of citizenship. In sustaining the statute against his claims, the Supreme Court announced that Congress has rather plenary power with respect to matters concerning the citizenship of foreign-born individuals. In light of such a sweeping declaration, this Court seemingly has little choice but to uphold the ruling of the district judge that Rucker forfeited his citizenship because of his failure to comply with the retention provision.

However, such a disposition may, at least as I see it, be an unfortunate one. For it is difficult to conceive of many harsher sanctions than the loss of an individual's birthright as a member of the American polity. This is especially so where, as here, such forfeiture stems from factors not wholly attributable to the person who has been stripped of his citizenship.

In this instance, it is evident that Rucker himself was unaware of the retention re-

---

5. The 1941 Report of Birth of Robert Rucker (Exhibit A to Stipulation at 29a–30a) notified Max Rucker of the five-year residence requirement then in effect.

1. 401 U.S. 815, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971). See the discussion of *Rogers* in the opinion of the majority at 1001–1003.

quirement, largely because his father neglected, for whatever reason, to inform him of it. Conceivably, such a situation could be a common one, since children in foreign lands may well be, in practical effect, dependent upon their parents if they are to learn of the statutory strictures in time sufficient to protect their citizenship.[2]

Moreover, the predicament in which Rucker finds himself may become more prevalent in the future. Today, in this era of ever-increasing transnational discourse, United States citizens are residing abroad in greater numbers—for example, as employees of multinational business enterprises or as emissaries—military and civilian—of the American government. It follows that the number of foreign-born children of American parentage promises to rise in the coming decades.

Given the unfortunate results that may obtain upon application of § 1401 in particular contexts, and the spectre of an increase in such cases because of current trends in international affairs, Congress may wish to consider the possibility of drafting a statute more flexible than the current retention provision appears to be. While § 1401 itself constitutes an improvement in the "direction of leniency"[3] over its precursors, this does not mean that further advances in dealing with the subject at hand have been foreclosed.

At this juncture, however, because of *Rogers* and the fact that Congress does have plenary power in the area in question, this Court may not countermand a determination within the province of the legislature. Accordingly, I join in the decision reached by my brethren.

---

**2.** At this point, it should be noted that the majority seems to suggest that Rucker is something of a transnational entrepreneur. Majority Opinion at 1003. He is depicted as having engaged in a "business with international relationships." Nevertheless, as I read the record, Rucker appears to be little more than the owner of a local farming operation in Argentina, with minimal international dimensions at best.

**3.** *Rogers v. Bellei,* 401 U.S. 815, 826, 91 S.Ct. 1060, 28 L.Ed.2d 499 (1971).